# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **FRANSICA AGATHA BELFON,** | : | |
| Plaintiff | : | CIVIL ACTION NO. 1:17-490 |
| v. | : | |
| | | **(JUDGE MANNION)** |
| **NANCY BERRYHILL**[1] **,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| Defendant | : | |

## MEMORANDUM

The above-captioned action is one seeking review of a decision of the Acting Commissioner of Social Security ("Commissioner") denying the plaintiff's application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§401-433. The court has jurisdiction pursuant to 42 U.S.C. §405(g). Currently before the court are the parties' cross-motions for summary judgment. (Doc. 7, Doc. 9). For the reasons set forth below, the plaintiff's motion will be granted, the defendant's motion will be denied, and the instant action will be remanded to the Commissioner for further proceedings in accordance with this decision.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security as the defendant in this suit.

**I.    BACKGROUND**[2]

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that plaintiff met the insured status requirements of the Social Security Act through September 30, 2014. (Tr. 17).[3] In order to establish entitlement to DIB, the plaintiff was required to establish that she suffered from a disability on or before that date. 42 U.S.C. §423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a); see Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

The plaintiff was born on November 24, 1948, (Tr. 33), and was an individual "closely approaching retirement age"[4]/[5] when the Administrative Law Judge ("ALJ") rendered his decision in this case. The plaintiff attended college

---

[2]Since the ALJ and the parties have set forth the medical history of plaintiff in their respective filings, the court will not fully repeat it herein. Rather, the court discusses the plaintiff's medical history only to the extent it is relevant to the issues raised in this appeal.

[3]References to "Tr. __" are to pages of the administrative record filed by the defendant. (Doc. 4).

[4]20 C.F.R. §404.1563(e).

[5]There are special rules related to the transferability of work skills for persons who are "closely approaching retirement age". 20 C.F.R. §404.1568(d)(4).

2

and has past relevant work as a central processing technician and an operating room technician. (Tr. 160, 174). The plaintiff stopped working on September 12, 2012, when she alleges she became disabled and unable to work due to back pain, stroke, memory loss, dizziness and balance issues, high blood pressure and heart murmur. (Tr. 159-60).

The plaintiff filed a claim for DIB on November 27, 2012, alleging disability commencing on September 12, 2012, due to the foregoing conditions. She was sixty-four (64) years old at the time. (Tr. 19-20, 35, 135-36, 159). The agency denied the plaintiff's application initially on April 19, 2013, and upon reconsideration on October 25, 2013. (Tr. 46-75, 79-92). The plaintiff then requested a hearing before an ALJ, which was held on August 25, 2015. (Tr. 29-45).

The ALJ issued a decision on September 16, 2015, in which he found that the plaintiff was not disabled within the meaning of the Act. (Tr. 17-24). The plaintiff filed a request for review, and on March 3, 2017, the Appeals Council denied the plaintiff's request, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). Since the plaintiff exhausted her administrative remedies, she initiated the present action on May 1, 2017, appealing the final decision of the Commissioner. (Doc. 1).

The plaintiff raises three grounds in support of her appeal of the ALJ's determination: (1) the ALJ committed errors of law and fact when he found she has no severe mental impairments and included no mental limitations in

3

her RFC, when the record evidence demonstrates the opposite and the ALJ purportedly relied on such evidence; (2) the ALJ violated Third Circuit law and Agency regulation when he failed to account for mental limitations in the residual functional capacity, ("RFC"), assessment that he had earlier assessed the plaintiff within his decision and which are supported by the evidence of record to which he gave weight; and (3) the ALJ erred when he gave great weight to the state agency physician opinions, but arbitrarily included only some of their opined hazard limitations in the RFC, limitations that would preclude the performance of past work according to the vocational expert ("VE"). As relief, the plaintiff seeks to have this court remand her case to the Commissioner for further proceedings.

## II. STANDARD OF REVIEW

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999), Johnson, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. Richardson

4

v. Perales, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

In the present case, there are cross-motions for summary judgment. "In Social Security cases, the substantial evidence standard applies to motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(c)." Antoniolo v. Colvin, 208 F.Supp.3d 587, 595 (D.Del. 2016) (citing Woody v. Sec'y of the Dep't of Health & Human Servs., 859 F.2d 1156, 1159 (3d Cir.1988).

## III.  DISABILITY EVALUATION PROCESS

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §404.1520. See also Plummer, 186 F.3d at 428. If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §404.1520.

Here, the ALJ found that the plaintiff has not engaged in substantial gainful activity since September 12, 2012, the alleged onset date, through her date last insured of September 30, 2014. (Tr. 19). Next, the ALJ determined that plaintiff suffered from severe impairments, including history of transient ischemic attack, hypertension and knee osteoarthritis, status-post knee surgery. (Tr. 19). The ALJ then found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 21). At step four of the process, the ALJ found that plaintiff had the RFC to perform light work except that she must avoid heights and uneven ground. (Tr. 22).

6

The plaintiff testified at the hearing and, while the ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the ALJ also found that the plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible. (Tr. 22).

Also testifying at the hearing was a VE, who testified that the plaintiff's past work as a central processing technician was light, semi-skilled, SVP of 3, and her work as an operating room technician was light, skilled, SVP of 6. Upon questioning by the ALJ, the VE testified that the plaintiff's past relevant work would not include hazards such as heights and uneven ground, but would include hazards such as working around dangerous implements. The VE testified that symptoms, including headaches and dizziness, would have adverse vocational impact insofar as the hazards were concerned and, moreover, severe enough headaches could interfere with productivity because of lack of concentration or focus. According to the VE, loss of productivity greater than 15% to 20% would result in a preclusion of work. Upon questioning by the plaintiff's attorney, the VE testified that an individual who was unable to bend, stoop or balance would not be able to perform the plaintiff's past relevant work and there would be no transferability of skills. Further, the VE testified that an individual could not perform the plaintiff's past relevant work, if the individual could perform light work activity but, due to pain, memory and focus limitations, was limited to simple, routine, unskilled

work. (Tr. 14-16).

The ALJ then determined that based on plaintiff's age, education, work experience and RFC, the plaintiff was capable of performing her past relevant work as a central processing technician and was not under a disability, as defined in the Act, at any time from the date of her alleged onset through the date last insured. (Tr. 24).

## IV. DISCUSSION

The plaintiff first argues that the ALJ committed errors of law and fact in his opinion when he found that she had no severe mental impairments and included no mental limitations in her RFC, when the record evidence demonstrates the opposite and the ALJ purported to rely on such evidence. Specifically, the plaintiff argues that the ALJ gave "great weight" to the treating opinion of Dr. Borson, who the ALJ credited as saying that "the claimant is most likely **not disabled** due to her conditions." (Tr. 21) (emphasis added). The ALJ indicated that such a finding would be consistent with the other medical evidence of record, which he indicated reflects that the plaintiff does not have the need for intensive specialized mental health treatment and is not cognitively limited. However, upon review of the record, the plaintiff correctly points out that what Dr. Borson actually opined was "[p]atient **is most likely disabled** because of her neurological limitations - see reports of her Neurologist." (Tr. 322) (emphasis added). Thus, the ALJ obviously erred

8

in his reading of Dr. Borson's report. Whether or not the ALJ's opinion would be altered by a correct reading of Dr. Borson's report is not for the court to surmise. Because it is clear that the ALJ gave "great weight" to an improperly read report of the plaintiff's treating physician, the plaintiff's motion for summary judgment will be granted on this basis and the matter will be remanded, so that the ALJ can give proper consideration to the report and determine whether the information impacts his decision.[6]

---

[6]The defendant argues that the court should not consider this argument because the ALJ issued a favorable decision at Step Two of the process and, therefore, it cannot be a basis for remand. The court recognizes that the Step Two determination is a threshold analysis requiring the showing of only one severe impairment, which the ALJ found in this case. However, the plaintiff makes her arguments, not only in relation to Step Two, but also in relation to later steps, including with respect to her RFC assessment. Because the ALJ considered erroneous evidence, which may not only have impacted his decision at Step Two, but later steps as well, the court considers the plaintiff's arguments. See Palin v. Colvin, 2013 WL 5924972, at *3 (E.D.Pa. Nov. 5, 2013) (citing Jennings v. Astrue, 2009 WL 7387721, at *16 (E.D.Pa. Nov. 30, 2009)).

Moreover, in ruling upon the parties' motions for summary judgment in this case, the court considers only whether the ALJ's determination is supported by substantial evidence, and indications that the ALJ relied upon erroneous information in making his determination cannot support a finding that the determination was based upon substantial evidence. See Lopez v. Colvin, 2014 WL 5410299, at *15 (D.R.I. Oct. 22, 2014) (when the ALJ makes a finding based on a factually incorrect reason, the ALJ's finding is not supported by substantial evidence) (citing King v. Califano, 615 F.2d 1018, 1020 (4th Cir. 1980); Persico v. Barnhart, 420 F.Supp.2d 62, 75 (E.D.N.Y.2006)). In this regard, when incorrect evidence is relied upon, even if other appropriate reasons are given, it is impossible for the court to determine how much the error corrupted the ALJ's determination. Lopez,
(continued...)

In addition, the plaintiff argues that the ALJ erred in finding that her Global Assessment of Functioning ("GAF") scores in the 50-60 range, which were assessed by Dr. Borson and examining psychologist Dr. Simon, were consistent with only mild social and occupational limitations. In fact, the plaintiff argues that such scores indicate moderate mental functional problems.

The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. Button v. Colvin, 2013 WL 6805069, at *5 (M.D. Pa. Dec. 20, 2013) (citing Diagnostic and Statistical Manual of Mental Disorders 3-32 (4th ed.1994) ("DSM"). The GAF rating is the single value that best reflects the individual's overall functioning at the time of examination. Id. The rating, however, has two components: (1) symptom severity and (2) social and occupational functioning. Id. The GAF is within a particular range if either the symptom severity or the social and occupational level of functioning falls within that range. Id. When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the worse of the two. Id. According to the DSM, a GAF score of 51 to 60 represents "moderate symptoms or any moderate difficulty in social, occupational, or school functioning." Id.

---

⁶(...continued)
supra.

In the exhibits relied upon by the ALJ, Dr. Simon assessed the plaintiff's GAF at 58 on April 9, 2013. (Tr. 301). On October 9, 2013, Dr. Borson assessed the plaintiff's GAF in the 50-60 range. Both scores reflect moderate symptoms or any moderate difficulty in social, occupational, or school functioning, not mild limitations as indicated by the ALJ. The ALJ's conclusion that these GAF scores were consistent with mild limitations was in error. Again, whether proper consideration of the GAF scores which reflect the plaintiff's limitations as moderate, as opposed to mild, would ultimately change the ALJ's disability determination is not a matter for the court to speculate about, as the court considers only whether the ALJ's determination is supported by substantial evidence. As previously noted, indications that the ALJ relied upon erroneous information in making his determination do not support a finding that the determination was based upon substantial evidence. See n.6.

The plaintiff also argues that the ALJ believed, based upon the testimony of the VE, that her past work as a central processing technician was SVP 3 when, in fact, it was SVP 4[7] and is classified as reasoning level 3. Although neither the VE, nor the ALJ, identified this past work by its DOT

---

[7]A SVP 3 calls for semi-skilled work and allows for preparation time over one month up to and including three months, while a SVP 4 calls for semi-skilled work and allows for preparation time of over three months up to and including six months. Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. 20 C.F.R. §404.1568(b); SSR 00-4p.

number, the plaintiff argues that the DOT job description for her job, DOT #381.87-010, Central-Supply Worker (Medical Service) - alternate titles Central-Service Technician, provides that it is classified as SVP 4 with a reasoning level 3. The plaintiff argues that, even if she had only mild mental impairment, her ability to perform SVP 4, semi-skilled work would be impacted.

The plaintiff is correct that the Central-Supply Technician position is listed in the DOT as an SVP 4, reasoning level 3, not SVP 4. Further, upon review of the record, the entire VE testimony, including questioning by the ALJ and the plaintiff's counsel, consumes just slightly over two pages of the hearing transcript. There is no testimony regarding what DOT number the VE relied upon or how the VE came to the conclusion that the plaintiff's past work as a Central-Supply Technician was SVP 3. Moreover, there is no testimony in the record as to any conflict with the DOT. In this regard, Social Security Ruling ("SSR") 00-4p was adopted to clarify the Social Security Administration's standards for identifying and resolving conflicts between "occupational evidence provided by a [vocational expert] . . . and information in the DOT." SSR 00-4p. The ruling states that:

> "[o]ccupational evidence provided by a VE [vocational expert] or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.

12

> At the hearing level, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-04p.

The Third Circuit has interpreted this ruling to mean that an ALJ has a duty to inquire about any discrepancy between a vocational expert's testimony and information contained in the DOT. Burns v. Barnhart, 312 F.3d 113, 127 (3d Cir. 2002). An ALJ's failure to comply with the requirements of SSR 00-04p may result in a remand of a claim by the district court. Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005). Nevertheless, a remand is only appropriate where the vocational expert's testimony is inconsistent with the DOT and there is no other substantial evidence in the record to support the ALJ's decision. Id.; see also McHerrin v. Astrue, 2010 WL 3516433, *5 (E.D.Pa. Aug.31, 2010).

Here, there appears to be a conflict between the VE's testimony and the DOT. However, there is no inquiry by the ALJ, nor testimony by the VE, regarding such conflict. Given this, and in light of the court's finding that a determination of substantial evidence cannot be made on the record currently before the court, the plaintiff's motion for summary judgment will be granted on this basis. Upon remand, the ALJ should clarify the basis of the VE's testimony, address any conflict between the VE's testimony with the DOT,

and determine whether the plaintiff can still perform her past work activity at SVP 4.

The plaintiff next argues that the ALJ failed to include in his RFC finding and dispositive hypothetical question mental functional limitations which he himself had found to be present. Despite finding that the plaintiff has mild limitations in concentration, persistence, pace, social functioning and activities of daily living[8], the ALJ included no mental functional limitations in his RFC finding or his hypothetical question to the VE.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing basis." See Social Security Ruling 96–8p, 61 Fed.Reg. 34475. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. §404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)."). In determining a plaintiff's RFC, the ALJ must consider all relevant evidence, including the medical evidence of record and the plaintiff's subjective complaints. 20 C.F.R. §404.1545(a). The responsibility for determining a plaintiff's residual functional capacity at the hearing level is reserved for the ALJ, 20 C.F.R. §404.1546, and the final responsibility for determining the RFC

---

[8]Even mild impairment can preclude skilled and semi-skilled work activity. See Hutton v. Astrue, 491 Fed.App'x 50 (9th Cir. 2012).

is reserved for the Commissioner, who will not give any special significance to the source of another opinion on this issue, 20 C.F.R. §404.1527(e)(2), (3).

In Antoniolo v. Colvin, 208 F.Supp.3d 587, 597 (D.De. 2016), the court explained:

> A hypothetical question must include all of the claimant's "credibly established limitations." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). Accordingly, a limitation that is supported by medical evidence, and "otherwise uncontroverted in the record," must be included in the hypothetical. Zirnsak v. Colvin, 777 F.3d 607, 614 (3d Cir.2014). "However, where a limitation is supported by medical evidence, but is opposed by other evidence in the record, the ALJ has discretion to choose whether to include that limitation in the hypothetical." Id.

The "ALJ generally must accept evidence from a vocational expert, who, based on the claimant's age, education, work experience, and RFC, testifies whether there are jobs for such a person in the national economy." Morgan v. Barnhart, 142 Fed.Appx. 716, 720-21 (4th Cir. 2005).

In this case, the ALJ determined that the plaintiff had mild limitations in concentration, persistence, pace, social functioning and activities of daily living, but did not include those limitations in his RFC assessment or hypothetical to the VE. Upon remand, should the ALJ find that the plaintiff's limitations are supported by the medical evidence and are otherwise uncontroverted, the ALJ must include those limitations in his hypothetical to the VE. If, however, the ALJ determines that the limitations are supported by the medical evidence, but are opposed by the other evidence in the record, the ALJ need not include those limitations in his hypothetical to the VE.

15

Finally, the plaintiff argues that the ALJ erred when he attributed great weight to the opinion of State Agency doctor Navjeet Singh, M.D., who opined, in part, that the plaintiff should avoid exposure to hazards, such as machinery, heights, etc., but the ALJ only included exposure to heights in his RFC, without discussion of exposure to other hazards. The plaintiff also argues that the ALJ's failure to include additional limitations goes against the testimony of the VE, who testified that the plaintiff's past work involved hazards aside from heights, including operating equipment and dangerous implements.

Initially, upon review of the record, Dr. Singh completed a Disability Determination Explanation form on which he indicated that the plaintiff had environmental limitations and, as a result, was asked to rate the plaintiff's limitations in various areas. One area reflects "Hazards (machinery, heights, etc.)." In response, Dr. Singh responded "Avoid concentrated exposure," but did not provide any specific hazard restrictions or any other explanation. As such, the court does not find the ALJ was required to consider limitations which Dr. Singh did not specifically assert. However, upon questioning by the ALJ regarding the impact the plaintiff's headaches and dizziness, the VE testified that the plaintiff's past relevant work had hazards, including working around dangerous implements, where balance/dizziness would be an issue. While considering the need to avoid heights and uneven ground in the plaintiff's RFC assessment, presumably because of the plaintiff's

16

balancing/dizziness issues, the ALJ did not consider the VE's testimony regarding other hazards, which he should have done, absent an explanation as to why such was not necessary. As such, the plaintiff's motion for summary judgment will be granted on this basis as well.

## V. CONCLUSION

For the reasons stated above, the plaintiff's motion for summary judgment, (Doc. 7), is **GRANTED**, the defendant Commissioner's motion for summary judgment, (Doc. 9), is **DENIED**. Pursuant to 42 U.S.C. §405(g), the decision of the Commissioner will be **VACATED** and the instant action **REMANDED** for further proceedings consistent with this opinion. An appropriate order will be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:** September 28, 2018

O:\Mannion\shared\MEMORANDA - Delaware Cases\17-490-01.wpd